UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROSEANN M. PALERMO,

       Plaintiff,

v.	1:15-CV-1024
	(GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

       Defendant.
_____

APPEARANCES:	OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS	PETER M. MARGOLIUS, ESQ.
 Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.	GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

   Currently before the Court, in this Social Security action filed by Roseann M. Palermo, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.     RELEVANT BACKGROUND

    A.     Factual Background

Plaintiff was born on February 7, 1966.  Plaintiff has a tenth grade education, and has past work as a supermarket meat clerk and a personal care aide.  Generally, Plaintiff's alleged disability consists of pain in the low back and bilateral legs, and anxiety.

    B.     Procedural History

On November 28, 2012, Plaintiff applied for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income, alleging disability beginning March 1, 2008.  Plaintiff's application was initially denied on February 15, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On March 24, 2013, Plaintiff appeared in a hearing before the ALJ, Terence Farrell.  (T. 27-63.)  On May 8, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-26.)  On June 22, 2015, the Appeals Council denied Plaintiff's request for review.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 14-22.)  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security act through December 31, 2016, and has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date.  (T. 14.)  Second, the ALJ found that Plaintiff's lumbar degenerative disc disease, obesity, and osteopenia are severe impairments, but that Plaintiff's adjustment disorder is not a severe impairment.  (T. 14-16.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the

"Listings"). (T. 16.) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except she can occasionally lift, carry, push, and pull 20 pounds. She can frequently lift, carry, push, and pull 10 pounds. She can stand about three hours in an eight-hour workday with normal breaks with standing limited to about 30 minutes at a time. She can sit three hours in an eight-hour workday with normal breaks, with sitting limited to two hours at a time. She can walk about two hours in an eight-hour workday with normal breaks with walking limited to about one hour at a time. She can frequently reach, push, and pull with each upper extremity. She can frequently use both the right and left foot controls. She can occasionally stoop and occasionally climb stairs and ramps. She can never climb ladders, ropes, and scaffolds. She can never balance, kneel, crouch, or crawl. She should never be exposed to unprotected heights and temperature extremes. She can occasionally be exposed to loud noise, such as noise from heavy traffic, but cannot be exposed to very loud noise.

(T. 16.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 20.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff can perform. (T. 21.)

**D.  The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff argues that the ALJ's step five finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is not supported by the Dictionary of Occupational Titles ("DOT"). (Dkt. No. 10, at 3-5 [Pl.'s Mem. of Law].) More specifically, Plaintiff disputes the vocational expert's testimony that she can perform the layaway clerk and order clerk positions because Plaintiff argues that she cannot perform semi-skilled work. (*Id.*)

---

[1]  Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday. 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251 (1983).

3

Generally, Defendant argues that the ALJ's step five determination was supported by substantial evidence. (Dkt. No. 11, at 1-6 [Def.'s Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner]

5

> then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ's Step Five Determination was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 4-6 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at

603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

To determine whether Plaintiff could perform other existing work in the national economy, the ALJ provided a hypothetical to the vocational expert that was even more restrictive than Plaintiff's abilities and restrictions set forth in the RFC. (T. 21.) The vocational expert testified that, based on the hypothetical RFC, and Plaintiff's age, education, and work experience, Plaintiff could perform jobs that exist in significant numbers in the national economy. (*Id.*) More specifically, the vocational expert testified that Plaintiff could perform the order clerk position (DOT number 209.567-014; SVP level two) and layaway clerk position (DOT number 299.467-010; SVP level three). (T. 54-55.) The ALJ stated that, pursuant to SSR 00-4p, he determined that the vocational expert's testimony is consistent with the information contained in the DOT. (T. 21.) The ALJ further stated that, because the established RFC is less restrictive than the relevant hypothetical RFC posed to the vocational expert, Plaintiff can perform the occupations identified by the vocational expert. (*Id.*) Accordingly, the ALJ concluded that there is other work that exists in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

Plaintiff argues that the ALJ erred in relying on vocational expert testimony that she could perform semi-skilled work because the ALJ found that Plaintiff had a limited (tenth grade) education and no past relevant work. (Dkt. No. 10, at 4 [Pl.'s Mem. of Law].) As an initial matter, the Court notes that while the layaway clerk position is SVP level three, which corresponds with semi-skilled work, the order clerk position is SVP level two, which

7

corresponds with unskilled work.² (T. 54.)³ Therefore, Plaintiff's argument that she could not perform the order clerk position because she could not perform semi-skilled work fails.

Moreover, the Court finds that the ALJ did not err in finding that Plaintiff could perform the semi-skilled work identified by the vocational expert. First, Plaintiff's argument does not cite any evidence of record demonstrating that Plaintiff had specific mental limitations that would prevent her from performing semi-skilled work. (Dkt. No. 10, at 1-5 [Pl.'s Mem. of Law].) Notably, Plaintiff did not dispute the ALJ's RFC finding, which did not limit Plaintiff to unskilled work or include any other mental limitations. (*Id.*)

Second, the ALJ's determination that Plaintiff could perform the semi-skilled layaway clerk position was supported by substantial evidence, including the mental opinions of consultative psychiatric examiner Brett Hartman, Psy.D., and State agency psychological consultant, Howard Ferrin, Ph.D., discussed below.

i. **Consultative Psychiatric Examiner Dr. Hartman**

On February 7, 2013, Dr. Hartman opined that Plaintiff could follow and understand simple directions, and make appropriate decisions; and Plaintiff had a fair ability to maintain attention and concentration, learn new tasks, and maintain a regular schedule. (T. 364.) Dr.

---

² "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn)." SSR 00-4P, 2000 WL 189870, at *3 (Dec. 4, 2000) (citing SSR 82-41). Under the regulations, unskilled work corresponds to an SVP level of one or two; and semi-skilled work corresponds to an SVP level of three or four. SSR 00-4P, 2000 WL 189870, at *3 (Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1568, 416.968).

Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568(a), 416.968(a). Semi-skilled work "is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b).

³ Although the ALJ's decision misstated that the order clerk position is level four, the vocational expert correctly identified that position as level two. (T. 21, 54); DICTIONARY OF OCCUPATIONAL TITLES, 1991 WL 671794 (4th ed., rev. 1991).

8

Hartman opined that Plaintiff had mild difficulty dealing appropriately with the normal stressors of life. (*Id.*)

Upon examination, Dr. Hartman observed that Plaintiff was cooperative and pleasant, her eye contact was appropriate, her speech was clear and fluent, her thought processes were coherent and goal directed, her sensorium was clear, and she was alert and oriented times three. (T. 362-63.) Although Dr. Hartman estimated that Plaintiff's intellectual functioning appeared to be somewhat below the average range, Dr. Hartman found that Plaintiff's attention and concentration, and recent and remote memory skills appeared to be generally intact; her insight was fair; and her judgment was fair to good. (T. 363.) Dr. Hartman observed that Plaintiff was able to perform counting, simple calculations, and serial threes with minimal difficulty; could recall four out of four objects immediately, and three out of four objects after five minutes; and could perform six digits forward and four digits backward. (*Id.*)

Plaintiff reported to Dr. Hartman that she had never been psychiatrically hospitalized, never received outpatient mental health services, and never been suicidal. (T. 361-62.) Plaintiff reported that her primary care physician prescribed BuSpar for anxiety secondary to pain, but she stopped taking it because she did not find it helpful. (T. 15, 361.) Plaintiff further reported that she took Trazodone to help her sleep but that it was "wearing off." (T. 15, 362.) Plaintiff reported that she was temporarily somewhat depressed due to the death of her mother two weeks prior, but denied symptoms of major depression. (*Id.*) Additionally, Plaintiff alleged that she had anxiety caused by pain and had rare anxiety attacks. (*Id.*) Plaintiff denied all other psychiatric symptoms. (*Id.*) Dr. Hartman diagnosed Plaintiff with pain disorder associated with a general medical condition and adjustment disorder with anxiety. (T. 364.)

### ii. State Agency Psychological Consultant Dr. Ferrin

On February 5, 2013, Dr. Ferrin reviewed the evidence of record regarding Plaintiff's mental abilities and limitations. (T. 66-69.) Dr. Ferrin opined that Plaintiff *was not limited to performing unskilled work.* (T. 73.) Moreover, Dr. Ferrin adopted Dr. Hartman's opinion of Plaintiff's mental RFC discussed above, finding that Dr. Hartman's opinion was consistent with the preponderance of the medical evidence of record. (T. 69.)

A review of the record indicates that treating sources at Columbia Memorial Hospital reported no mental deficits upon examining Plaintiff, and indicated that Plaintiff was alert and cooperative, had a calm and appropriate affect, spoke coherently, and was oriented times three. (T. 247, 273, 280, 294, 300, 396, 407, 436.) Additionally, attending physician Salim Contractor, M.D., at New York Oncology Hematology reported no mental deficits upon examining Plaintiff and indicated that Plaintiff had "no abnormal mental status;" was oriented to person, time, and place; her mood and affect were appropriate to the situation; she had appropriate judgement and insight; and her memory was intact. (T. 459, 463.)

The Court notes that an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Finally, the ALJ's finding that Plaintiff could perform the semi-skilled layaway clerk position was supported by Plaintiff's own statements regarding her current work and activities of daily living. Plaintiff reported that she had worked part-time as a meat clerk in a supermarket since 2002. (T. 15, 34, 174, 207, 361.) The vocational expert noted that this job had a SVP level of four, corresponding to semi-skilled work. (T. 53.) Plaintiff indicated that she never attended special education classes, and reported that she could pay bills, count change, and handle a savings account. (T. 174. 220.) Plaintiff further reported that she dresses, bathes, and grooms herself; cares for her son; cooks, cleans, and does laundry; shops on her own; manages her money; uses public transportation; and gets along very well with her next-door neighbor and family members. (T. 202-03, 363.) Finally, Plaintiff reported that she spends her days working part-time, doing household chores, collecting coupons, watching television, reading, and using the computer, including Facebook. (T. 220, 363.)

In sum, the Court finds that the evidence of record does not establish that Plaintiff has any mental impairments that would preclude her ability to perform semi-skilled work. Moreover, the ALJ did not err in posing a hypothetical question to the vocational expert that did not limit Plaintiff to unskilled work because Plaintiff's ability to perform semi-skilled work was supported by substantial evidence, including Dr. Ferrin's opinion above. *Dumas*, 712 F.2d at 1553-54 (approving a hypothetical question to a vocational expert that was based on an assumption supported by substantial evidence in the record). Therefore, the ALJ did not err in relying on the vocational expert's testimony, the ALJ's step five determination was supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 18, 2016
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge